498

HARRIS TRUST AND SAVINGS BANK, EXECUTOR OF THE ESTATE OF ALEXANDER FRIEND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33885. Promulgated October 27, 1931.

*Benjamin E. Jaffe, Esq.*, for the petitioner.
*P. M. Clark, Esq.*, and *C. C. Holmes, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The problem for solution in this proceeding is whether or not any part of the payments received by the decedent, Alexander Friend, from the Brunswick-Balke-Collender Company during the period between January 1, 1924, and September 2, 1926, constituted taxable income. To solve this problem we must determine what it was that Friend acquired by reason of his agreement with Shank and wife. Such a determination involves consideration of the contract by which in the year 1922 Shank and his wife agreed to convey to the Brunswick-Balke-Collender Company the premises described in the agreement between Shank and Friend.

By the contract with the Brunswick-Balke-Collender Company Shank and his wife covenanted to convey to the corporation the real property referred to if the corporation made the payments specified and performed the covenants on its part to be performed. The contract price was $345,000. The corporation paid $45,000 in cash and agreed to pay the balance of the purchase price, namely, $300,000, in 180 monthly payments. These monthly payments did not bear interest until after maturity and no notes were given for the unpaid balance of the purchase price. By the provisions of the contract immediate possession of the premises was vested in the purchasing corporation, which agreed to pay all taxes and to keep the property insured. A warranty deed conveying title in fee simple to the corporation was placed in escrow, by Shank, for delivery to the purchasing corporation upon its compliance with the terms of the agreement. The sellers, however, reserved the right to reenter and repossess the premises in the event that the purchaser defaulted in any of the covenants on its part to be performed. It was also provided that whenever 60 per cent of the purchase price had been paid the Brunswick-Balke-Collender Company should be entitled at its election, upon 30 days notice, to receive the warranty deed, provided it executed and delivered a purchase-money second mortgage for the amount of the unpaid balance of the purchase

price. It was also stipulated that the contract and the premises described therein were subject to the terms and conditions of a certain deed of trust conveying the premises as security for an issue of bonds totaling $180,000, of which the sum of $142,000 was still unpaid at the date of the execution of the contract. Shank and wife, as sellers, agreed to pay the unpaid balance of the mortgage and it was further agreed that the monthly amounts to be paid by the purchasing corporation should be applied first to the payment of principal, interest and other charges due monthly under the terms of the trust deed referred to. The balance of these monthly payments, if any, were payable to Shank.

In our opinion the Brunswick-Balke-Collender contract was a completed contract of sale in 1922. *Seletha O. Thompson*, 9 B. T. A. 1342; *Old Farmers Oil Co.*, 12 B. T. A. 203; *Harry C. Moir*, 14 B. T. A. 23; affd., 45 Fed. (2d) 356. After the execution of the contract, the making of the initial payment, the placing of the purchaser in possession and the delivery of the deed to the escrow agent, the sellers retained only the bare legal title to the premises described in the contract and the right to reenter and repossess them in the event of the default or defaults of the purchasing corporation. If the purchasing corporation fulfilled its covenants the deed would be delivered to it and the bare title to the land reserved by the sellers would be extinguished. This bare legal title and the right to reenter and repossess the premises constituted the security held by the sellers for the payment of the balance of the purchase price. Practically, therefore, the sellers were in the same situation as if they had actually conveyed the title to the premises to the purchasing corporation and had accepted a purchase-money second mortgage for the unpaid balance of the purchase price. As a matter of fact the contract provided that the sellers were to receive such a second mortgage if the purchasing corporation elected to exercise its option and demand the deed to the premises after 60 per cent of the purchase price was paid.

It follows from the foregoing that after the agreement between Shank and wife and Friend had been fully consummated, as set out in the findings of fact, Friend acquired under that agreement only what Shank and his wife had to sell, namely, the right to receive monthly payments as specified in the Brunswick-Balke-Collender contract, the unpaid total of which might be converted into a purchase-money second mortgage under specified conditions, together with the right as owner of the bare legal title to repossess the premises in the event of the default of the Brunswick-Balke-Collender Company. Friend, therefore, purchased something akin to a purchase-money second mortgage, the balance unpaid thereon at date of purchase being payable in 164 stipulated monthly amounts,

without interest until after maturity. In the deficiency notice, copy of which is attached to the petition herein, respondent held that the transaction entered into by Friend with Shank and wife "partakes of the nature of a deferred payment sale on the installment basis, and that profits should be reported yearly upon payments received." The respondent thereupon stated in the deficiency notice that since "the purchase price was $164,000 and since the amount to be received was $273,332.15 there was a profit of $109,332.15 to be reported over the period covered by the original sale agreement." Such a computation of profit is based on the primary assumptions that the Brunswick-Balke-Collender Company would not default in any of the monthly payments to be made by it during a period of 164 months, or approximately 14 years, and that the total sum payable in monthly amounts without interest over a period of 14 years was worth its face at the time the Brunswick-Balke-Collender contract was purchased by Friend. We are of the opinion that these assumptions are not well founded and would not furnish a proper basis for computing profits in such a case as this. It is a matter of common knowledge that the financial character and solvency of any corporation may change in a few years, that real estate may depreciate in value and that obligations that are only a second lien on real estate rarely sell for their face value. Cf. *Kosmerl* v. *Commissioner*, 25 Fed. (2d) 87, affirming 4 B. T. A. 1151.

It appears from the evidence that contracts such as the Brunswick-Balke-Collender Company contract were bought and sold in the Chicago real estate market just as second mortgages are bought in that same market, namely, at their fair market value. The testimony discloses that the realty which was the security for the payment of the monthly amounts to be paid to Friend was depreciating in value, that the building on the premises was not well constructed and was built for factory purposes only, and that the neighborhood of the premises was undesirable. A witness, who was admittedly qualified, testified that in the Chicago real estate market the customary and usual method of determining the fair market value of such a contract as the Brunswick-Balke-Collender contract was to discount the present worth of the deferred payments by at least 20 per cent. This percentage of discount was arrived at by consideration of the value of the land and buildings covered by the contract and the financial character of the person or corporation obligated to pay the deferred amounts. This witness also testified to the effect that at the date the right to receive the monthly payments was acquired by Friend their present worth was $186,221.75. This testimony stands uncontradicted and undisputed in the record and no reason is shown why it should be disregarded by us. We have, therefore, found that the fair market value of the Brunswick-Balke-Collender contract, at the

date of its acquisition by Friend, was $150,000. Since this amount is less than the cost of the contract to Friend, we are of the opinion that the cost should be recovered from the monthly payments before any taxable income will be derived. It therefore follows that during the period in question in this proceeding Alexander Friend was not required to report any taxable gain on the transaction herein considered until he had received payments in his own right in the aggregate sum of $151,384.64, the cost to him of his interest in the Brunswick-Balke-Collender contract. See *Somers Lumber Co.*, 2 B. T. A. 106; *D. M. Stevenson*, 9 B. T. A. 552.

In accordance with the stipulation entered into between the parties, we find for the purpose of the recomputation of deficiencies in income tax that the adjusted net income of Alexander Friend for the year 1924 was $56,928.97; for the year 1925 his adjusted net income was $62,291.83; and for the period from January 1, 1926, to September 2, 1926, his adjusted net income was $45,587.86. The deficiencies should be recomputed accordingly.

*Judgment will be entered under Rule 50.*